**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LOUISIANA PELLETS, INC., <u>et al.</u>[1] | ) | Case No. 16-80162 |
| | ) | |
| Debtors. | ) | Joint Administration Pending |
| | ) | |

**EMERGENCY MOTION PURSUANT TO SECTIONS 105(A), 362 AND 365 OF THE
BANKRUPTCY CODE TO COMPEL PERFORMANCE OF E.ON UK PLC'S
OBLIGATIONS UNDER AN EXECUTORY CONTRACT
<u>AND TO ENFORCE THE AUTOMATIC STAY</u>**

<u>**SUBJECT TO MOTION AND ORDER TO FILE UNDER SEAL**
**UNREDACTED VERSION FILED UNDER SEAL**</u>

Louisiana Pellets, Inc. ("<u>LPI</u>") and German Pellets Louisiana, LLC ("<u>GPLA</u>," and

together with LPI, the "<u>Debtors</u>"), as debtors and debtors in possession in the above-captioned

case, hereby file their Emergency Motion Pursuant to Sections 105(a), 362 and 365 of the

Bankruptcy Code to Compel Performance of E.ON UK plc's Obligations Under an Executory

Contract and to Enforce the Automatic Stay (the "<u>Motion</u>"). In support hereof, the Debtors

respectfully state:

**I.**
**INTRODUCTION**

1.      In 2012, E.ON UK, plc ("<u>E.ON</u>") voluntarily entered into a sale agreement with

GPLA (as defined below, the "Sale Agreement"), for the sale of a designated quantity of wood

pellets by GPLA to E.ON ███████████. Since the agreement was executed, the price of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal
tax identification number, are Louisiana Pellets, Inc. (3369) and German Pellets Louisiana LLC
(3414). The location of the Debtors' corporate headquarters and service address is: 4915
Highway 125, Urania, Louisiana 71480.

wood pellets has declined.  The Sale Agreement is now extremely beneficial to the Debtors and

detrimental to E.ON.  In fact, the Sale Agreement is worth ███████████ to the Debtors'

estates and is currently their sole source of revenue.  ██████████████████████████████

█████████████ the story for E.ON is even worse: it no longer has any use for wood pellets.[2]

Thus, E.ON is required to purchase something it does not need ██████████████████

Understandably, E.ON would like to rid itself of the contract.

     2.      Since the Debtors filed their bankruptcy cases, E.ON has made several attempts to

do just this.  First, E.ON informed the Debtors that it would not purchase pellets as required

under the Sale Agreement unless the Debtors provided additional assurances with respect to past

and future pellets deliveries.  Next, E.ON filed a Motion to Compel Assumption or Rejection of

the Sale Agreement less than a month into the case.  Then, by letters dated February 29 and

March 24, 2016, E.ON informed the Debtors that it rejected the proposed shipments tendered for

delivery to E.ON.

     3.      E.ON's correspondence and its Motion to Compel Assumption or Rejection

reflect E.ON's actual, and improper, motives.  E.ON complains that GPLA has not complied

with certain sustainability requirements set forth in Section 5.6 of the Sale Agreement.  But

E.ON concedes that it "had previously not been so concerned as to whether the wood pellets . . .

met Sustainability Requirements" due to a resale agreement it had in place.  (*See* Motion to

Compel Assumption or Rejection, at ¶14.)  As to future shipments, including the pending

shipment, the Debtors voluntarily provided information not required by the Sale Agreement to

provide E.ON comfort that the forthcoming shipment complied with sustainability requirements.

---

[2] See Motion to Compel Assumption or Rejection of Contract or, in the Alternative, for Relief
from Stay to Allow Termination of Contract (the "<u>Motion to Compel Assumption or Rejection</u>")
[Docket No. 78], at § 5 ("Following the Assignment, E.ON determined that it no longer required
the wood pellets for its own use.").

Notwithstanding these voluntary and extensive disclosures that expressly address E.ON's stated concerns, E.ON still refuses to perform. As discussed in detail below, E.ON's stated rationale for refusing to perform is without contractual basis, and is at best, a concern regarding adequate assurance of future performance, to be addressed at a later time in connection with contract assumption.

4.     For the reasons further detailed below, the Court should compel E.ON's to perform its obligations under the Sale Agreement.

## II.
## JURISDICTION AND VENUE

5.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6.     Venue of these cases and this Motion is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.     The statutory predicates for the relief requested herein are sections 105(a), 362, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## III.
## BACKGROUND

8.     On February 18, 2016 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Western District of Louisiana (the "Court") commencing the above-captioned chapter 11 cases.

9.      The Debtors have continued in possession of their assets and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

10.      No trustee or examiner has been appointed in these chapter 11 cases.  The United States Trustee appointed an official committee of unsecured creditors on March 15, 2016.

## A.     <u>Industrial Wood Pellets and the Global Market for Wood Pellets</u>

11.      The Debtors are in the business of procuring and supplying industrial wood pellets, both from their wood pellet production facility located in Urania, Louisiana, and from other sources, as discussed below.

12.      Industrial wood pellets are produced in many locations around the world and are primarily used as fuel for biomass power plants and as a supplemental fuel in coal-fired power plants.

13.      While the global market for industrial wood pellets is limited, there is at any one time a generally prevailing market price for industrial wood pellets suitable for use as fuel for power plants.  Such market price does vary by region.  For wood pellets delivered into the Amsterdam-Rotterdam-Antwerp region in Europe, prevailing spot prices have ranged from more than $155 per metric ton in December 2015 to approximately $141 per metric ton as of mid-March, 2016.  ████████████████████████████████████████

████████████████████████████████████████████████  ██████

████████████████  ████████████████████████████

## B.     <u>E.ON'S Ironbridge Facility</u>

14.      Before its closure in November 2015, E.ON owned and operated the Ironbridge power plant located in Shropshire, United Kingdom ("<u>Ironbridge</u>").  Ironbridge was originally a

- 4 -

1,000 megawatt coal-fired plant, but was converted to burn wood pellets in early 2013 (at a lower capacity of 740 megawatts) in order to qualify for certain government subsidies. A fire at the Ironbridge facility further reduced the station's generating capacity to 370 megawatts.

15.     Under the European Union directive known as the EU Large Combustion Plant Directive, first issued in 2001, generating stations such as Ironbridge were required to install emissions abatement equipment or face closure by late 2015 at the latest. E.ON elected to close the Ironbridge plant, rather than install the necessary emissions abatement equipment.

16.     E.ON utilized wood pellets at its Ironbridge plant from February 2012 through November 2015, when the plant closed.

## C.     The Sale Agreement

17.     In order to secure wood pellet supply for its Ironbridge plant, E.ON entered into the Sale Agreement effective August 15, 2012, with German Pellets Texas, LLC. With the consent of E.ON, GPLA, and German Pellets Texas, LLC, the rights and responsibilities of German Pellets Texas, LLC were assigned, and assumed to GPLA, effective March 7, 2013.

18.     The Sale Agreement is essentially a supply agreement, pursuant to which GPLA supplies and sells wood pellets to E.ON. Under the Sale Agreement, E.ON is required to purchase ███████ metric tons (plus or minus 5% at seller's option) annually ███████████ ██████████████████████████████████████ Under the Sale Agreement, E.ON's purchase commitment runs through the end of █████.

19.     Even though the wood pellet production facility owned and operated by the Debtors is not yet fully operational, the Sale Agreement contemplates that the wood pellets to be sold under the agreement may be procured and sourced from other facilities. (*See, e.g.*, Sale Agreement, Recitals) Indeed, GPLA sold and provided wood pellets to E.ON for over two years

from 2013 through late 2015 sourced from other facilities, and E.ON accepted, purchased, and paid for such pellets.

20.     E.ON's obligation to purchase wood pellets under the Sale Agreement is one of the Debtors' most valuable assets, and is currently the sole source of operating revenue in these chapter 11 cases.

**D.     E.ON's Resale of Wood Pellets Purchased Under the Sale Agreement**

21.     As E.ON has acknowledged, in part because of the closure of the Ironbridge facility, E.ON no longer has a need or use for wood pellets, and agreed to begin reselling the wood pellets to German Pellets Trading GmbH under a contract dated June 24, 2014 ("Resale Agreement"), which ended under its own terms as of December 31, 2015.  See Motion to Compel Assumption or Rejection [Docket No. 78], at § 5 ("Following the Assignment, E.ON determined that it no longer required the wood pellets for its own use.").  Even though the Ironbridge facility has closed, and the Resale Agreement has expired, it does not excuse E.ON's obligation to purchase wood pellets under the terms ████████ of the Sale Agreement.

22.     ████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████ ████████████

**E.** **Procedure for Tendering and Accepting Shipments of Wood Pellets Under the Sale Agreement**

23.     Under the Sale Agreement (a copy of which is attached as **Exhibit "1"** hereto), E.ON is required to accept and purchase wood pellets tendered through a process outlined in the agreement.

24.



**F.** **"Sustainability Requirements" Under the Sale Agreement**

27.     The Sale Agreement contains certain "sustainability" requirements under Section 5. These requirements are intended to allow E.ON as end user to comply with certain regulatory requirements. Such requirements include, generally, requirements relating to characteristics of the wood pellets and the raw wood supply used in manufacture as being produced in a "sustainable" fashion.

28.     Among other requirements, Section 5 of the Sale Agreement provides for compliance with Appendices 1a, 1b, and 2 to the Sale Agreement (discussed below). ███████



29.     Appendices 1a, 1b, and 2 to the Sale Agreement impose other requirements.  Most notably, Appendix 2 provides for certain additional "sustainability" requirements.  That Appendix provides:

- ██████████████████████████████████████████
  ████████████████████████ (Sale Agreement, Appendix 2, §2.1)



- ██████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ███████████ (Sale Agreement, Appendix 2, §3.3)

- 8 -

- ██████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

(Sale Agreement, Appendix 2, §3.5)

30.   ██████████████████████████████████████

██████████████████████████████████████████████

████████████████  █████████████████████████████

██████████████████████████████████████████

███████████████████████████████████

## G.   **E.ON's Bad Faith Actions Undertaken to Avoid Compliance With the Terms of the Sale Agreement**

31.   Since late 2015, E.ON has engaged in strenuous efforts to refuse further shipments of wood pellets under the Sale Agreement.  ████████████████████████████

██████████████████████████████████████████████████

████████████████████and the fact that E.ON no longer has a use for the wood pellets, it is not surprising that E.ON would undoubtedly prefer to terminate the agreement, if possible.  For the reasons set forth below and to be established at the hearing on this matter, GPLA submits that

---

[3] Because pellets containing certified material are physically identical to those lacking such material, there is no way to "test" or physically inspect pellets for sustainability.  Rather the distinction reflects the harvesting and management methods used, including for example, road building, treatment of run off, establishment of buffer zones, use of special equipment, and procedures to minimize environmental impact and prevent soil erosion.

such efforts are in bad faith, constitute a willful refusal to comply with the terms of the Sale Agreement, and are in violation of the automatic stay.

32.      In late 2015, and coincidentally at the same time that E.ON's Resale Agreement was ending and E.ON lost its ability to resell pellets, E.ON began asserting that it had concerns regarding the "sustainability" and other requirements under the Sale Agreement. Each time, GPLA addressed the concerns raised by E.ON. These concerns included:



| E.ON Concern | GPLA Response |
|---|---|

33.      As noted above and as will be established at the hearing on this matter, GPLA worked with E.ON in good faith to address the concerns raised.[4]

---

[4]

34.     However, E.ON did not work with GPLA in good faith.  Instead of working with GPLA to resolve any concerns in a reasonable fashion, as discussed in more detail below, E.ON asserted a series of invalid arguments as a basis to reject any and all future shipments.  Beginning shortly after the Petition Date, E.ON has asserted one argument after another in an attempt to avoid performing its obligations.

35.     In addition, when E.ON filed its Motion to Compel Assumption or Rejection, E.ON filed the entire Sale Agreement into the public record of the bankruptcy case docket, in blatant disregard for the confidentiality provisions of the agreement (Sale Agreement, §25.1), and in apparent disregard for the general integrity of the Sale Agreement.  Among other things, the confidential and sensitive pricing information within the Sale Agreement (showing the extent of the above-market pricing) was publicly disclosed, allowing GPLA's competitors to download such sensitive information ███████████████████████████████████████████

36.     As soon as this action was discovered, GPLA was forced to immediately take action to seal the pleading, through application to the Court, which entered an Order sealing the matter from public access that same day. [Docket #84]  GPLA may have incurred immediate damages from E.ON's action in blatant disregard of the confidentiality provision. ██████████

███████████████████████████████████████████████████

████████████████████████████████████████

██████████ GPLA reserves its damages claim and will address same at the appropriate time when other contractual issues with E.ON are addressed.

37.     The reason for E.ON's bad faith actions may be transparent. ████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

██████████████

████████████ Due to E.ON's own business decisions to close the Ironbridge facility, E.ON has no need or use for the wood pellets. ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████ Nevertheless, even though this outcome may not be desirable for E.ON, it is the economic bargain that E.ON struck when it entered into the agreement.

38.      ████████████████████████ Section 365 of the Bankruptcy Code does not provide relief for *non-debtors* to shed unwanted contracts.  The simple fact is that there is no right under the Sale Agreement or applicable law for E.ON to avoid complying with its obligations to the Debtors owed under the agreement.

## H.      GPLA Has Tendered a Valid Nomination and Shipment for Immediate Delivery of Wood Pellets

39.      Since February 22, 2016, GPLA has three times tendered a valid nomination and shipment for immediate delivery of wood pellets to E.ON.  All three times, E.ON has rejected such nomination and shipment without reasonable cause.

### (1)      February Shipment Rejected by E.ON Without Reasonable Cause

40.      As of February 22, 2016, GPLA nominated a shipment of wood pellets to be shipped to E.ON under the Sale Agreement, and to be sourced from the ████████ facility owned and operated by ████████████.[5] This shipment is referred to herein as the "February Shipment."  E.ON rejected the shipment, using several invalid arguments (as

---

[5] ████████████████████████████████████████████████
████████████████████████████████████████████████
████ Additionally, all of ████████ pellet facilities are certified by the Forest Stewardship Council, Sustainable Forestry Initiative, and the Programme for the Endorsement of Forest Certifications, three leading independent forestry organizations in the world.  *See id.*

discussed below). Due to its failure to timely accept the February Shipment, the shipment no longer became available in March 2016 and the specific wood pellets offered were sold to another buyer by ▮▮▮▮. As a result, E.ON's delay tactics with respect to the February Shipment cost the Debtors substantial lost profits.

41. Specifically concerning the February Shipment, E.ON employed the following arguments to refuse the shipments, which had no proper basis under the Sale Agreement:



| **E.ON Argument** | **GPLA Response** |
|---|---|

**(2) March Shipment Rejected By E.ON Without Reasonable Cause**

42. After the February Shipment was rejected, GPLA tendered another shipment (as defined below, the "March Shipment"), which E.ON has rejected not once, but now twice,

without any contractual or reasonable basis. The object of this Motion is to compel E.ON to perform under the Sale Agreement and accept the March Shipment as it is contractually required to do.

43. Due to E.ON's failure to timely accept the February Shipment, during the week of March 14, 2016, GPLA learned that the February Shipment was no longer available (having been sold to another buyer), and therefore GPLA worked with ███████ to identify and nominate a further shipment of wood pellets to be delivered under the Sale Agreement. That shipment (the "March Shipment") was identified, and GPLA sent to E.ON the formal nomination on March 23, 2016. (*See* **Exhibit "5"**)[6] That formal nomination included attachments ████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████████ ██████████████████An updated version of the formal nomination and attached Sustainability Template was sent to E.ON on March 30, 2016. (*See* **Exhibit "6"**)[7]

44. As part of the formal nomination and tender of the March Shipment, GPLA informed E.ON that █████████████████████████████████████ ████████████████████████████ ████ ████████████████meeting the overall ██████threshold required under Section 5.6 of the Sale Agreement. (*See* **Exhibit "6"** at Attachment "D".)[8]

45. In response to GPLA's March 23 and 30 letters and tender of the March Shipment, E.ON has refused to accept such shipment, without reasonable cause or contractual

---

[6] Exhibit "5" is a copy of the March 30, 2016 correspondence excluding the attachments.
[7] See attached as Exhibit "6" a copy of the March 30, 2016 correspondence including all attachments.
[8] This certification actually exceeds what is required under the agreement, since the agreement requires ██████ on an annual basis. (*See* Sale Agreement, § 5.6.)

basis.  Remarkably, E.ON acknowledged that ████ and GPLA have certified that the March

Shipment itself meets the "sustainability" requirements.  However, E.ON still takes the position

that it may reject the March Shipment.

46.     As its basis for rejecting the March Shipment, E.ON cites language ████



48.     As discussed in more detail below, E.ON's argument essentially acknowledges

that the March Shipment satisfies the "sustainability" requirements (because ████ has certified

it), but E.ON is taking the position that it is entitled to reject the March Shipment because of

E.ON's doubts that GPLA will be able to satisfy the "sustainability" requirements over a longer

term.  This position has no contractual basis whatsoever, and is directed to adequate assurance of

- 15 -

future performance. Under Section 365 of the Bankruptcy Code, E.ON is not allowed to withhold performance now simply because it has concerns about adequate assurance of future performance, which is an issue reserved for contract assumption at a later time.

**I.**     **Basis for Emergency Consideration.**

49.     As discussed above, the most recent nomination and shipment is still available as of the date of this Emergency Motion. However, such shipment may imminently be purchased by another buyer at any time, and GPLA understands that, under normal commercial conditions, the March Shipment may only be available for only a few additional days.

50.     Given the exigent timing issue relating to the March Shipment, GPLA requests emergency and expedited consideration of this Motion.[9]

**IV.**
**RELIEF REQUESTED**

51.     Pursuant to sections 105(a), 362 and 365, the Debtors request that the Court compel E.ON to perform its obligations under the Sale Agreement.

**V.**
**BASIS FOR RELIEF REQUESTED**

**A.**     **The Agreement Is an Executory Contract that May Be Enforced By GPLA**

52.     The Agreement is an executory contract because material performance remains due by both E.ON and GPLA. *See, e.g., Matter of Murexco Petroleum, Inc.,* 15 F.3d 60, 62-63 (5th Cir. 1994) ("an agreement is executory if at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby

---

[9] GPLA understands that E.ON may assert that under the terms of the Sale Agreement, that the next delivery date is on or about ▮▮▮▮, 2016. Although the Debtors have attempted on numerous occasions to provide shipments of wood pellets to E.ON in February and March 2016, E.ON has at every opportunity refused to accept the proposed shipment. Therefore, GPLA requests that the Court include in its order granting this Motion that E.ON is barred from asserting that the February Shipment and March Shipment were not timely made by the Debtors.

excusing the performance of the other party"); *Shoppers World Cmty. Ctr. v. Bradlees Stores, Inc. (In re Bradlees Stores Inc.)*, Case No. 01-CV-3934 (SAS), 2001 U.S. Dist. LEXIS 14755, at *19-20 (S.D.N.Y. Sept. 20, 2001); *In re Teligent, Inc.*, 268 B.R. 723, 730 (Bankr. S.D.N.Y. 2001) (citing Vern Countryman, Executory Contracts in Bankruptcy: Part 1, 57 Minn. L. Rev. 439, 460 (1973)).  E.ON does not dispute that the Sale Agreement is executory.  See Motion to Compel, at ¶ 3 (referring to the Sale Agreement as an "executory contract").

53.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521 (1984); *In re Lavigne*, 114 F.3d 379, 386 (2d Cir. 1997). "[T]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993).

54.     While a debtor's decision whether to assume or reject an executory contract is pending, the counterparty to an executory contract must continue to perform its obligations under the contract.  The United States Supreme Court has held that an unassumed executory contract is not enforceable against a debtor. *See Bildisco*, 465 U.S. at 531. On the other hand, an unassumed executory contract, while not enforceable against the debtor, is still enforceable by the debtor against the counterparty. *See e.g., McLean Indus., Inc. v. Medical Laboratory Automation, Inc. (In re McLean Indus., Inc.)*, 96 B.R. 440, 449 (Bankr. S.D.N.Y. 1989) ( "a debtor-in-possession's ability to continue to perform and to compel performance with respect to an assumable executory contract is usually the life blood of its reorganization."); *Public Ser. Co. of New Hampshire v. New Hampshire Electric Cooperative, Inc. (In re Public Ser. Co. of New Hampshire)*, 884 F.2d

- 17 -

11, 14 (1st Cir. 1989) ("Ordinarily, the debtor need not commit itself to assumption or rejection of such a contract until a reorganization plan is confirmed. In the meantime, the executory contract remains in effect and creditors are bound to honor it.") (citation omitted); *In re Public Data-Link Systems Inc. v. Whitcomb & Keller Mortgage Co. (In re Whitcomb & Kelle Mortgage Co.)*, 715 F.2d 375, 378-79 (7th Cir. 1983) .

55.     E.ON is compelled to perform even if there are pending defaults (which GPLA denies). *See, e.g., Krafsur v. UOP* (Bankr. W.D.Tex. 1996) ("The Code places an independent duty on the non-debtor to continue performance of an executory contract until it is assumed or rejected…Whether the debtor performs or not, the non-debtor must perform until assumption or rejection."); *In re Broadstripe, LLC*, 402 B.R. 646, 650, 656 (Bankr. D. Del. 2009) (counterparty compelled to perform despite debtor's prepetition payment default of $3.4 million); *In re Pacific Gas & Elec. Co.*, 2004 U.S.Dist. LEXIS 22023, at *16-18 (N.D.Cal. Sept. 30, 2004) (even where counterparty ceased performance prior to bankruptcy under state law contract rights, that party was required to resume performance after filing of bankruptcy).

**B.     The Court Has the Authority to Compel E.ON's Performance and Enforce the Automatic Stay**

56.     This Court has the authority to compel E.ON to continue to perform its obligations under its executory contract with GPLA.  For example, in the *Lehman Brothers* bankruptcy, the Bankruptcy Court addressed a very similar issue involving an executory contract ██████████████████████████████████████ Judge Peck in the Southern District of New York had no difficulty entering an order requiring the counterparty to render performance. *See In re Lehman Bros Holdings Inc.,* Case No. 08-13555 (Bankr. S.D.N.Y. Sept. 17, 2009)  Judge Peck held that "while a debtor determines whether to assume or reject an executory contract the counterparty to such contract must continue to perform." (*See* **Exhibit**

- 18 -

**"8,"** consisting of the transcript from Docket #5261 in Case No. 08-13555, at p. 106) Judge

Peck's order held that "pending assumption or rejection" the counterparty "shall perform its

obligations to make payments to [the debtor] under the agreement," including certain specific

payments as set forth in the order. (*See* **Exhibit "9,"** consisting of the order from Docket #5209

in Case No. 08-13555, at p. 106)

57.     In *In re Ernie Haire Ford*, 403 B.R. 750 (Bankr. M.D.Fla. 2009), the bankruptcy

court granted a debtor's motion to compel performance, holding that the contracts were still in

effect and "[w]hile these agreements are in full force and effect, the parties are bound by their

terms and must continue to operate under the agreements in good faith." Id. at 761.

58.     GPLA's right to receive payments under the Sale Agreement for required sales of

wood pellets under the agreement, constitutes property of the estate.  E.ON's attempts to exercise

control over such property of the estate by failing to make payments under the Sale Agreement

violate the automatic stay. *See, e.g., In re Lehman Bros Holdings Inc.* (*See* **Exhibit "8,"** at pp.

112-113) ("[The Debtors] are entitled to continued receipt of payments under the Agreement.

[The counterparty's] attempts to control [the Debtor's] right to receive payment under the

Agreement  constitute, in effect, an attempt to control property of the estate….This is a violation

of the automatic stay imposed by Code Section 362.")

59.     *See also In re Broadstripe, LLC*, 402 B.R. 646, 657 (Bankr. D. Del. 2009) ("By

refusing to perform its obligations under the Member Agreement, NCTC is interfering with

Broadstripe's property rights under the Member Agreement and acting in violation of the

automatic stay."); *In re Enron Corp.*, 300 B.R. 201, 212 (Bankr. S.D.N.Y. 2003) ("Courts have

consistently held that contract rights are property of the estate, and that therefore those rights are

protected by the automatic stay.") (citations and internal quotations omitted); *In re Baltimore*

*Marine Indus.*, 476 F.3d 238, 240 (4th Cir. 2007) ("Amounts owed to the debtor under existing

REDACTED VERSION

contracts are included within the estate.").[10]

## C.    This Court Should Enter an Order Compelling E.ON to Accept the Pending Nomination and Shipment

60.    E.ON is compelled to continue performance under the Sale Agreement.  E.ON has not stated a valid basis to reject the pending March Shipment and nomination, which is ready to be delivered to E.ON under the terms of the agreement.

61.    As discussed above, GPLA has a pending shipment (the March Shipment) ready for delivery to E.ON.  E.ON has no basis or justification to pre-emptively reject the Shipment.  And yet, E.ON has stated repeatedly that it is doing so.

62.    In its most recent April 1, 2016 correspondence, E.ON states that its rejection is based on the "sustainability" requirements under the Sale Agreement.  However, E.ON acknowledges that GPLA and ▮▮▮▮ (the supplier of the pellets) are certifying that the pellets meet the "sustainability" requirements ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮    See **Exhibit "7"** at 2.7.2.)  In addition, GPLA and ▮▮▮▮ have submitted certain other information ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮

63.    GPLA has fulfilled its obligations under the Sale Agreement and E.ON is now obligated to accept and pay for the March Shipment.  The certification and information provided by GPLA and ▮▮▮▮is all that is required under the agreement (and indeed, exceeds the requirements under the agreement).  Section 5.6 of the agreement, and Appendices 1a, 1b, and 2, concerning sustainability requirements, provide that:

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[10] GPLA reserves the right to seek at a later date sanctions for E.ON's knowing violation of the automatic stay.  The fact that such violation of the stay is a "knowing violation" cannot credibly be disputed by E.ON since it has filed its own request to lift the stay. See Motion to Compel Assumption or Rejection [Docket No. 78].



64.     For the March Shipment, GPLA has more than exceeded the above requirements.

65.     Remarkably, E.ON apparently acknowledges that the March Shipment meets the sustainability requirements, but E.ON still takes the position that it may reject the shipment. (*See* **Exhibit "7."**)

66.     E.ON's position is without merit.  First,



67.     Second, E.ON is not (and cannot) raise concerns with <u>current performance</u> under the March Shipment, but is now instead expressing concern with <u>future performance</u> under the "long term" of the agreement. ████████████████████████████████ ████████████████████████████████████████ ████████████████ ████████████████████████████████████ This is a concern not about current performance under the agreement but about the Debtor's adequate assurance of future performance.  As such, it is a concern that must be addressed at a later time, when and if the Debtor assumes the agreement as an executory contract.

68.     E.ON's failure to perform under the agreement and accept the pending nomination and shipment is causing significant harm and damages to the Debtors' estates.  The Sale Agreement is the Debtors' sole source of operating revenue, and E.ON's refusal to honor its obligations under that agreement are jeopardizing the Debtors' reorganization efforts.  The Debtors in fact have a contractually bound source of revenue in the form of the Sale Agreement, but as discussed above, E.ON is refusing to perform under that agreement, in a manner that GPLA asserts is in bad faith.

69.     GPLA submits that this Court should compel performance to bring immediate funds into the bankruptcy estate and to require E.ON to do what it is bound to do under the agreement and Section 365 of the Bankruptcy Code.

---

[11] ██████████████████████ ███ ████████ ████ ███

# VI.
# NOTICE

70.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) those persons who have formally appeared and requested notice of service in this proceeding pursuant to Bankruptcy Rules 2002 and 3017; (iii) counsel for and the members of any committees appointed by this Court; (iv) UMB Bank as administrative agent for the Bondholders through their counsel; (v) E.On UK plc through its counsel;  and (vi) governmental agencies having a regulatory or statutory interest in these cases.   In light of the nature of the relief requested, and the exigent circumstances of these cases, the Debtors submit that no further notice is necessary.  Pursuant to the separately filed motion to seal, the Debtors intend to file this Motion in redacted form in the public record, without exhibits; with the unredacted version with exhibits filed under seal.

WHEREFORE, the Debtors respectfully request that the Court: (i) enter an Order, in substantially the same form as that attached as Exhibit A, granting the relief requested herein; and (ii) provide such other relief as the Court deems appropriate and just.

Dated: April 4, 2016                              Respectfully Submitted,


By: /s/ C. Davin Boldissar
C. Davin Boldissar (La. #29094)
Locke Lord LLP
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130-6036
Telephone: (504) 558-5100
Fax: (504) 558-5200

and

Alan H. Katz (La. #07644; N.Y. #5134580)
Locke Lord LLP
3 World Financial Center, 20th Floor
New York, New York 10281

- 23 -

Telephone: (212) 415-8509
Fax: (212) 812-8380

**ATTORNEYS FOR**
**LOUISIANA PELLETS, INC. AND**
**GERMAN PELLETS LOUISIANA, LLC**

# EXHIBIT A

## PROPOSED ORDER

**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LOUISIANA PELLETS, INC., et al. | ) | Case No. 16-80162 |
| | ) | |
| Debtors. | ) | Joint Administration Pending |
| | ) | |

**ORDER PURSUANT TO SECTIONS 105(A), 362 AND 365 OF THE BANKRUPTCY CODE COMPELLING PERFORMANCE OF E.ON UK PLC'S OBLIGATIONS UNDER AN EXECUTORY CONTRACT AND TO ENFORCE THE AUTOMATIC STAY**

Upon the motion, dated April 4, 2016, filed by Louisiana Pellets, Inc. ("LPI") and German Pellets Louisiana, LLC ("GPLA," and together with LPI, the "Debtors"), as debtor and debtor in possession in the above-captioned case, and titled Emergency Motion Pursuant to sections 105(a), 362, and 365 of the Bankruptcy Code to Compel Performance of E.ON UK, plc's Obligations Under and Executory Contract and to Enforce the Automatic Stay (the "Motion"); and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, including to E.ON UK, plc ("E.ON"), and no other or further notice need be provided; and this Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their creditors, and all parties in interest; and the Court having overruled any and all objections to the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that, the relief requested in the Motion is granted; and it further

- 2 -

ORDERED that, pending assumption or rejection of the Pellets Sale and Purchase Agreement dated August 15, 2012 (the "<u>Sale Agreement</u>") by the Debtors, E.ON shall perform its obligations to make payments to the Debtors as set forth in the Sale Agreement, without regard to any alleged defaults by the Debtors under the Sale Agreement existing as of the date of this Order, and it is further

ORDERED that E.ON shall perform its obligation to accept the March Shipment (as defined in the Motion), and it is further

ORDERED that, to the extent E.ON alleges that a default under the Sale Agreement arises after the date of this Order, E.ON shall only be permitted to withhold performance under the Sale Agreement in the event E.ON files a motion with this Court describing such default and requesting that it be permitted to withhold performance, and upon an order from this Court granting such motion, and it is further

ORDERED, that E.ON shall be enjoined from asserting that the February Shipment or the March Shipment (each as defined in the Motion) and/or any pending shipment of wood pellets due as of the date of this Order, were not timely made by the Debtors, and it is further

ORDERED, that this Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.


Dated: _____


_____
    UNITED STATES BANKRUPTCY JUDGE

182946v.1

- 3 -