**SO ORDERED.**

**SIGNED July 22, 2016.**



_____
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

IN RE:

| | |
|---|---|
| LOUISIANA PELLETS, INC., ET AL, | CASE NO. 16-80162 |
| | CHAPTER 11 |
| Debtor in Possession | Jointly Administered |

-----------------------------------------------------------------
REASONS FOR DECISION
-----------------------------------------------------------------

The question before the court is the scope of the safe harbor created by 11 U.S.C. § 556 and whether a long-term wood pellet supply agreement falls within that safe harbor. Section 556 allows a "forward contract merchant" to terminate a forward commodities contract post-petition based on an *ipso facto* clause in the contract.[1] The debtors seek to preserve their right to assume or reject the wood pellet supply contract as an ordinary executory

---

[1] An *ipso facto* clause allows a party to terminate a contract based solely on a counter-party's insolvency, bankruptcy filing, or financial condition.

contract under 11 U.S.C. § 365.  The counter-party to that
contract, E.ON UK PLC ("E.ON"), opposes the assumption of the
contract on multiple grounds, including the section 556 safe
harbor.  E.ON filed the instant motion for relief seeking an order
from the court confirming that the contract falls within section
556 and that, accordingly, the automatic stay does not bar E.ON
from terminating the contract.  At a preliminary hearing on E.ON's
motion for relief, the court requested that the parties brief four
threshold questions that could be decided as a matter of law based
on the parties' contracts, the relevant statutory language, and any
undisputed facts:

- First, whether the *ipso facto* clause as modified by a September 6, 2013 Consent and Subordination Agreement satisfies the requirements for the section 556 safe harbor;

- second, whether E.ON is estopped from relying on this safe harbor;

- third, whether E.ON has waived any right to invoke the safe harbor because it did not raise this argument timely; and

- fourth, the definition of a "forward contract merchant" under section 556.

The parties have fully briefed these four threshold issues.  After
considering the parties' briefs, the record, and the relevant
authorities, the court rules on these issues as follows.

## BACKGROUND

Louisiana Pellets, Inc., and German Pellets Louisiana, LLC
(the "debtors") are members of a corporate group centered in

-2-

Wismar, Germany, that processes raw wood into specialized wood pellets used to fuel power plants and heating systems in Europe. Louisiana Pellets owns a pellet production facility under construction in Urania, Louisiana, and German Pellets Louisiana is the general contractor for the facility. On August 15, 2012, German Pellets Texas, LLC, another member of the German Pellet corporate group, entered into the Wood Pellets Sale and Purchase Agreement (the "Sale Agreement") with E.ON. E.ON is a United Kingdom-based power generator that, at the time the Sale Agreement was executed, operated a facility that used wood pellets to generate electricity. The Sale Agreement provided for multiple shipments of wood pellets to E.ON over five (5) years. This Sale Agreement was assigned to German Pellets Louisiana on March 7, 2013. Clause 22.1.5 of the Sale Agreement contains a standard *ipso facto* provision:

> 22.1. Each party has the right to terminate this Agreement...on or any time after the occurrence of any of the following events ("Events of Default")...
>
> ....
>
> "...22.1.5 a Party instituting or having instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law or other similar law affecting creditors' rights, or a petition is presented for its winding-up or liquidation, and, in the case of any such proceeding or petition

-3-

> instituted or presented against it, that proceeding or petition (I) results in a judgment of insolvency or bankruptcy or the entry of an order for relief or the making of an order for its winding-up or liquidation or (ii) is not withdrawn, dismissed, discharged, stayed or restrained in each case within thirty (30) days of the institution or presentation of that proceeding or petition.

This clause, however, was modified by an agreement entered into by the parties on September 6, 2013, in connection with a bond offering by Louisiana Pellets (the "Consent Agreement"). The Consent Agreement authorized Louisiana Pellets to assign its rights under the Sale Agreement to the trustee and collateral agent for the bondholders. Section 4 of this Consent Agreement provides:

> <u>Bankruptcy</u>. Notwithstanding anything to the contrary contained in this Agreement or the [Sale Agreement], [E.ON] covenants and agrees that it will not terminate the [Sale Agreement] if [GPL] files or initiates proceedings or has proceedings filed or initiated against it relating to its liquidation, insolvency, reorganization or other relief under any bankruptcy, insolvency or other similar law so long as [E.ON] is being paid all amounts required to be paid to it under the terms of the [Sale Agreement] and [GPL] is otherwise fully performing its obligations under the [Sale Agreement], including, without limitation, the delivery of fully compliant product.

Louisiana Pellets and German Pellets Louisiana filed for relief under Chapter 11 of the Bankruptcy Code on February 18,

-4-

2016.[2]  The Sale Agreement swiftly became a point of contention between the debtors and E.On.  On April 4, 2016, the debtors filed an emergency motion to compel requesting an order compelling E.ON to perform under the contract.  According to the debtors, the Sale Agreement is an executory contract and that E.ON was required to perform its obligations under the contract until the time for the debtors to assume or reject the contract.  E.ON responded that the debtors breached certain provisions of the Sale Agreement and tendered non-confirming wood pellets.  Following an evidentiary hearing, the court granted the relief requested by the debtors.  E.ON subsequently appealed the ruling.

On March 15, 2016, E.ON filed a Motion to Compel Assumption or Rejection of the Supply Agreement requesting that the court shorten the time period for the debtors to assume or reject the Supply Agreement. In that motion, E.ON raised its arguments with respect to the debtors' performance under the Sale Agreement and, in addition, cited the economic hardships that it was facing under the Supply Agreement.  With respect to economic hardship, E.ON explained that, in 2014, it ceased the operations that relied on wood pellets and thus had no use for the wood pellets that it was

---

[2]This case was originally filed in the Monroe Division of the Western District of Louisiana.  The case was subsequently reassigned to the Lafayette Division after a recusal order was entered.

-5-

obligated to purchase under the Sale Agreement. To address this dilemma, E.ON entered into a contract with German Pellets Trading GmbH to purchase the wood pellets that E.ON was obligated to buy under the Sale Agreement. German Pellets Trading is a member of the German Pellets corporate group. German Pellets Trading subsequently commenced an insolvency proceeding. As a result, E.ON contends that it has no long-term avenue to resell the pellets that it is obligated to buy under the Sale Agreement. Compounding this hardship, the market price for wood pellets apparently declined during the period after E.ON entered into the Sale Agreement. The debtors' response is that general changes in the economic climate--such as falling commodity prices --or the actions of a contract party that may limit its need for the goods at issue are not grounds for that party to avoid its contractual obligations. The court conducted a hearing on this motion after entering relief on the debtors' motion to compel, and took E.ON's motion under advisement.

After the hearing on E.ON's motion to compel, E.ON filed the instant motion for relief from the automatic stay. According to E.ON, the Sale Agreement falls within the safe harbor of section 556 because (1) E.ON is a "forward contract merchant," and (2) the Sale Agreement contains an *ipso facto* clause. The court held a preliminary hearing on this motion and ordered the parties to brief

-6-

four threshold issues that could potentially dispose of the motion in advance of fact and expert discovery and an evidentiary hearing.

**DISCUSSION**

**A. The Section 556 "Safe Harbor"**

11 U.S.C. § 365 sets forth the powers of a debtor in possession to assume or reject an executory contract as well as the limitations on those powers. The automatic stay provisions in 11 U.S.C. § 362 aid this election process by preventing the non-filing party to an executory contract from terminating the contract prior to the debtor in possession making its election. Taken together, sections 365 and 362 provide the debtor in possession with the respite to make a reasoned decision whether to assume or reject an executory contract. Consistent with this policy, section 365(e)(1) bars the termination of an executory contract based on an *ipso facto* clause:

> (e)(1) Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on--
>
>    (A) the insolvency of financial condition of the debtor at any time before the closing of the case;

-7-

>    (B) the commencement of a case under this title; or
>
>    (C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

This prohibition on *ipso facto* clauses, however, is subject to "safe harbors" for certain, narrowly-defined types of transactions. 11 U.S.C. § 556 was added to the Bankruptcy Code by amendments enacted in 1982. Section 556 creates a safe harbor exception to section 365(e) for certain classes of commodity contracts, including forward contracts entered into by "forward contract merchants":

> The contractual right of a commodity broker, financial participant, or forward contract merchant to cause the liquidation, termination, or acceleration of a commodity contract, as defined in section 761 of this title, or forward contract because of a condition of the kind specified in section 365(e)(1) of this title, and the right to a variation or maintenance margin payment received from a trustee with respect to open commodity contracts or forward contracts, shall not be stayed, avoided, or otherwise limited by operation of any provision of this title or by the order of a court, in any proceeding under this title. As used in this section, the term 'contractual right' includes a right set forth in a rule or bylaw of a derivatives clearing organization (as defined in the Commodity Exchange Act), a multilateral clearing organization (as defined in the Federal Deposit Insurance Corporation Improvement Act of 1991), a national securities exchange, a national securities association, a securities clearing agency, a contract market designated under the Commodity Exchange Act, a derivatives transaction

-8-

> execution facility registered under the Commodity Exchange Act, or a board of trade (as defined in the Commodity Exchange Act) or in a resolution of the governing board thereof and a right, whether or not evidenced in writing, arising under common law, under law merchant or by reason of normal business practice.

The purpose for this safe harbor is to provide "certain protections...to prevent the insolvency of one commodity or security firm from spreading to other firms and possibly threatening the collapse of the affected market." H.R. No. 97-420. The House Report for the amendment further explains that the amendments will ensure that "the stay provisions of the Code are not construed to prevent brokers from closing out the open accounts of insolvent customers or brokers," and that the "prompt closing out or liquidation of such open accounts freezes the status quo and minimizes the potentially massive losses and chain reactions that could occur if the market were to move sharply in the wrong direction." Id.

E.ON contends that the Sale Agreement falls within this safe harbor because E.ON is a "forward contract merchant" and the Sale Agreement is a "forward contract" within the meaning of section 556. A contract is a forward contract for purposes of this provision if (1) the subject of the contract is a commodity with substantially all of the expected costs of performance attributable

-9-

to the expected costs of the underlying commodity; (2) the contract has a maturity date more than two days after the contracting date; (3) the price, quantity and time elements of the contract are fixed at the time of contracting; and (4) the contract has a relationship to the financial markets. See In re National Gas Distributors, LLC, 556 F.3d 247 (4th Cir. 2009); see also In re MBS Management Services, Inc., 432 B.R. 570 (Bankr. E.D. La. 2010), *aff'd* 690 F.3d 352 (5th Cir. 2012). E.ON contends that the Sale Agreement satisfies these elements and that the *ipso facto* provision in Clause 22.1.5 is, therefore, enforceable under section 556.

**B. Does Section 22.1.5 of the Sale Agreement as Modified by the Consent Agreement Fall Within Section 556?**

The first threshold legal issue is whether Clause 22.1.5 as modified by the Consent Agreement qualifies for the safe harbor under section 556. Section 556 states that a forward contract merchant's contractual right to liquidate, terminate, or accelerate a forward contract "because of a condition of the kind specified in section 365(e)(1)" is not barred by the automatic stay nor is it invalidated by the prohibition against *ipso facto* clauses in section 365(e)(1). E.ON contends that it is merely triggering its right under Clause 22.1.5 to terminate the Sale Agreement based on a filing of the petition in this case. According to E.ON, the

-10-

language in the Consent Agreement conditioning the exercise of these rights on the debtors' failure to perform does not eliminate or waive E.ON's underlying right to invoke the *ipso facto* clause. E.ON reads section 556's use of the term "condition *of the kind*" broadly to argue that any invocation of the *ipso facto* clause is sufficient to trigger the safe harbor even if that *ipso facto* clause is conditioned on other factors. The debtors, in contrast, argue that the Consent Agreement modifies Clause 22.1.5 in a way that brings it outside of the section 556 safe harbor. According to the debtors, E.ON is not attempting to terminate the agreement "because of a condition of the kind specified in Section 365(e)(1)," but instead must rely on the debtors' contract performance to trigger termination. The court agrees with the debtors' reading of section 556 and Clause 22.1.5 as modified by the Consent Agreement.

E.ON correctly argues that safe harbors such as section 556 are generally read broadly to promote the underlying purposes of the safe harbor. On the other hand, courts also construe the safe harbors according to their plain terms. In re Lehman Brothers Holdings Inc., 2016 WL 3621180 at *20 (Bankr. S.D.N.Y. June 28, 2016)(observing that "the safe harbors under the Code are meant to be read broadly and **according to their plain terms**.") Section 556 provides for a right of termination based on a "condition of the

-11-

kind specified in Section 365(e)(1)." Section 365(e)(1) refers to three such conditions: (1) "the insolvency or financial condition of the debtor;" (2) "the commencement of a case under this title;" and (3) "the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement." There is no condition listed in section 365(e)(1) that relates to other matters, including a debtor's performance under the executory contract at issue. Nor is contract performance the same *kind* of default trigger as the conditions enumerated in section 365(e)(1). The conditions specified in section 365(e)(1) are grounded on a debtor's financial condition or the fact of a bankruptcy filing, not contract performance. Here, the Consent Agreement modifies Clause 22.1.5 to preclude E.ON from invoking that clause based on the specific conditions specified in section 365(e)(1). Instead, E.ON must establish that the debtors have failed to perform under the Sale Agreement. This is not a condition "of the kind" set forth in Section 365(e)(1).

This reading of section 556 is consistent with case law and legislative history. The courts that have addressed the scope of section 556 have explained that a right to terminate only falls within the safe harbor if that right is based on the conditions specifically stated in section 365(e)(1). Other grounds to terminate--such as a termination based on contract performance--are

not protected under section 556's safe harbor.  See In re Calpine Corp., 2009 WL 1578282 at *6-7 (Bankr. S.D.N.Y. May 7, 2009) (holding that "by its terms, Section 556 of the Code is limited to enforcing only those terms that trigger termination upon the occurrence of one of the three specified conditions listed in Section 365(e)(1) of the Code");  6 Collier on Bankruptcy ¶ 556.04[3] at 556-17 (16th ed. 2013) (noting that "section 556 does not protect the exercise of commodity and forward contract liquidation, termination and acceleration rights for all kinds of defaults" and, accordingly, does not protect "defaults arising from failure to pay or perform obligations under commodity and forward contracts.").  This reading is also consistent with the legislative history of section 556.  Specifically, the House Report on section 556 refers to the negative impact of a bankruptcy filing or insolvency on the underlying commodity markets.  There is no reference in the legislative history to any other condition, such as a party's performance defaults under a specific forward agreement.  Accordingly, the case law and the legislative history support a reading of section 556 that limits the safe harbor to the exercise of contractual rights to terminate based on the specific conditions enumerated in section 365(e)(1).  The contractual provisions relied upon by E.ON do not fall within this safe harbor because they must be triggered by conditions other than the

-13-

conditions set forth in 365(e)(1)--namely, the debtors' failure to perform under the Sale Agreement.  Accordingly, for this reason alone, E.ON's motion for relief from stay must be denied.

E.ON seems to argue that the debtors bear the burden of establishing that they have fully performed under the Sale Agreement and that, absent this showing by the debtors, E.ON can enforce the *ipso facto* clause based on the conditions specified in section 365(e)(1) without any need to establish that the debtors failed to perform under the agreement.  This argument is not supported by the parties' contracts.  The Consent Agreement modifies Clause 22.1.5 to require a showing that the debtors have failed to perform their obligations under the Sale Agreement.  To terminate the agreement and therefore avoid its obligations under that agreement, E.ON must establish the grounds for termination. In the case of Clause 22.1.5, that right to terminate is conditioned on the debtors' failure to perform.  E.ON cannot read this contract performance trigger out of Clause 22.1.5 (as modified by the consent Agreement) by arguing that the debtors somehow bear the burden of affirmatively proving that they are in compliance with the Sale Agreement.

### C. The Remaining Issues

The parties also address the remaining three threshold issues in their briefs, including waiver, estoppel, and the meaning of the

-14-

term "forward contract merchant." In light of the court's ruling with respect to the scope of section 556, the court need not address these remaining threshold issues.

## CONCLUSION

For the foregoing reasons, the court **DENIES** E.ON's motion for relief from stay in its entirety. A separate order in conformity with the foregoing reasons has this day been entered into the record of this proceeding.

###